UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STAN LEE,<br><br>           *Plaintiff*,<br><br>- against -<br><br>MARVEL ENTERPRISES, INC. and MARVEL CHARACTERS, INC.,<br><br>           *Defendants.* | 02 CV 8945 (RWS)<br>ECF Case |

## DECLARATION OF JOSE M. ABADIN IN SUPPORT OF MOTION TO INTERVENE AND UNSEAL RECORDS

My name is JOSE M. ABADIN and I hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a duly elected Director of the Colorado corporation Stan Lee Media, Inc. ("SLMI" or "Company"). Pursuant to a May 27, 2010 ruling from the Colorado Court of Appeals, I am authorized to act as a board member of SLMI in the best interests of SLMI's shareholders.

2. I am licensed with FINRA CRD #1273345 as an Equity Trader, General Securities Principal, General Securities Representative, General Securities Sales Supervisor, and Registered Options Principal. I am employed with and registered by Glendale Securities, Inc., 15233 Ventura Boulevard, Sherman Oaks, CA 91403. I have over 25 years in the securities industry.

3. I make this declaration on behalf of SLMI in this action in support of Intervenor SLMI's Motion to Intervene and to Unseal Records (Intervenor's "Motion"). Unless otherwise qualified, I have personal knowledge of the facts set forth below.

I. **Background**

4. Stan Lee ("Stan Lee" or "Lee") authored dozens of the world's most famous and infamous comic-book heroes and villains. Attached hereto as Exhibit A is a non-exclusive list of Stan Lee's creations. As this Court found in its Order dated January 17, 2005 (the "January 17, 2005 Order"), Lee's creations include X-Men, the Incredible Hulk, Daredevil, the Fantastic Four, Iron Man, Doctor Strange, the Silver Surfer, and Spider-Man.

5. Intervenor SLMI seeks to unseal the "Sealed Documents" (as defined in the Motion) because those Sealed Documents contain evidence of the breadth and scope of an assignment of intellectual property Stan Lee made to SLMI in October 1998 (the "October 1998 Assignment").

6. On its face, the October 1998 Assignment states that Stan Lee assigned "all" of his intellectual property rights to SLMI.

7. Based on the October 1998 Assignment, SLMI issued a substantial portion of its shares to Stan Lee, put him and his team in control of management, and went public. At one point in 2000, SLMI had a market cap on the NASDAQ exchange in excess of $300 million.

8. The October 1998 Assignment was disclosed to the public in filings with the SEC and was eventually recorded with the Copyright Office for such characters as Spiderman, the Incredible Hulk, the X-Men and the Fantastic Four.

9. I invested a significant amount of my personal savings in SLMI based upon representations made to me by Stan Lee (and others) that Stan Lee had assigned to SLMI his ownership rights to characters he created and that appeared in Marvel comic books, such as Spiderman and the Hulk. Specifically, I had personal conversations with Stan Lee (and others) in which Stan Lee discussed how SLMI would generate significant revenues from the exploitation of the Hulk character. Similarly, at a party celebrating the launch of SLMI's "Initial

2

Public Offering," the main room containing the party was dominated by a huge statue of Spiderman – one of the many characters SLMI owned pursuant to its agreement with Stan Lee. In short, based upon personal conversations with Stan Lee, my review of materials provided to investors and/or publicly filed with the Securities Exchange Commission, and my discussions with Company management, I believed (and still believe) that Stan Lee transferred all of his rights and interests in all of his intellectual property, and all of the characters he created, to SLMI in return for his equity stake in the Company and other consideration.

10. I have had numerous conversations with other shareholders who invested in SLMI based upon representations that Stan Lee assigned his intellectual property rights, and transferred ownership of his creations, to SLMI pursuant to the October 1998 Assignment.

11. I am not a lawyer, but the plain meaning of the October 1998 Assignment appears to assign Lee's rights and ownership to SLMI. I have no reason to believe that this assignment is not an enforceable assignment, but, to the contrary, I believe this assignment to be valid and enforceable. In fact, I am informed that a search of copyright office records conducted by Thomson in 2010 revealed that no other assignments had been recorded for these characters.

12. In my estimation, the rights under the October 1998 Assignment are SLMI's most valuable assets.

13. I understand that, in this action, Stan Lee sued Marvel claiming breach of what Lee described as a "conditional" agreement that Lee and Marvel executed in November 1998 (the "November 1998 Agreement"). According to Lee, Marvel failed to pay him a promised 10% of the proceeds from the Spiderman film.

14. I believe that any advantage Stan Lee may have negotiated with Marvel in November 1998 constituted a usurpation of a corporate opportunity belonging to SLMI. I believe, based

upon documents provided to me and in the public record, that Marvel was aware that Lee had previously transferred all of his rights and interests in his creations to SLMI. Accordingly, by executing the November 1998 Assignment and paying Lee proceeds based upon the exploitation of intellectual property that Lee had previously assigned to SLMI, I believe Marvel was aiding and assisting Lee in his diversion of revenues and corporate opportunities away from SLMI and its shareholders, for Lee's own benefit.

15. On January 17, 2005, this Court, by the Honorable Robert W. Sweet, granted summary judgment to Stan Lee finding that Lee was entitled to a 10% profit sharing interest in Marvel's exploitation of Lee's creations.

16. Lee's October 1998 Assignment to SLMI and Lee's November 1998 Agreement with Marvel contain practically identical language. Based upon a reading of the plain language of these two documents, it appears that Stan Lee purported to give to Marvel in November 1998 the very same rights that he had already assigned to SLMI the month before.

17. I am informed that a diligent recent search of records maintained by the United States Copyright Office shows that neither Marvel nor Lee have ever recorded the November 1998 Agreement with the Copyright Office.

18. It is the validity of this unrecorded November 1998 Agreement that SLMI currently seeks to investigate. As part of this investigation, it is critical to determine whether Stan Lee asserted, in October 1998 and November 1998, that he owned the rights to his creations, and whether the existence of the October 1998 Assignment was disclosed to or considered by this Honorable Court when Judge Sweet issued a January 17, 2005 ruling on the "second-in-time" November 1998 Agreement.

19.     SLMI's investigation is timely and pressing because on May 27, 2010, the Colorado Court of Appeals empowered SLMI's current Board, elected by hitherto disenfranchised shareholders, to act on behalf of the Company. This decision resolved a multi-year battle by SLMI's disenfranchised shareholders for control of SLMI, and resulted in the ouster of Stan Lee and those under Lee's control. SLMI's main assets are the October 1998 Assignment, any assets acquired by SLMI, and any subsequent Lee creations to which SLMI is entitled under the October 1998 Assignment.

20.     SLMI is now free under Colorado law to marshal its assets and pursue claims on its behalf, in the best interests of SLMI's previously disenfranchised shareholders, against those who have infringed or tortiously interfered with SLMI's ownership rights, and who have breached duties owed to SLMI or aided and abetted in the same.

## II.     Relevant Factual and Procedural History

21.     The controversies swirling around the exploitation and ownership of some of Lee's most famous characters has been fodder for both tabloids and serious journalists for decades. In 1998, Lee founded SLMI (then called Stan Lee Enterprises) after Marvel entered bankruptcy and had repudiated its executory arrangements with Lee and others.

### A.     In 2002, Lee Sues Marvel (the present action)

22.     In July 2002, after Marvel emerged from bankruptcy, Stan Lee brought this suit against Marvel, Docket Number 02 CV 8945 ("*Lee v. Marvel*"). In the Complaint, Lee alleged:

> ¶13.    The Agreement at issue in this case was entered into among Mr. Lee, Company and Marvel as of November 1, 1998 …
>
> ¶14.    Under the Agreement the Defendants were given the right and assumed the obligation to commercially exploit Mr. Lee's characters, as well as his name. In order to facilitate these rights and obligations, Defendants received a conditional assignment of Mr. Lee's rights in his many world famous and hugely popular characters, and Mr. Lee was entitled to share in the profits from any live action or animation television or movie

production based on these characters and other Marvel characters, as well as profits from the exploitation of any ancillary rights associated with such film or television productions, including toys.

23. According to the Docket Sheet in *Lee v. Marvel*, Marvel filed and served its motion for partial summary judgment and an accompanying Rule 56.1 Statement of undisputed facts on February 13, 2004.

24. The Docket Sheet, however, does not show an entry for Lee's opposition or for Marvel's reply but, instead, indicates that both Lee and Marvel were granted permission to file oversized briefs. Furthermore, the Docket Sheet does not reflect the filing of Lee's Rule 56.1 Statement.

25. On January 17, 2005, this Court issued a Memorandum and Opinion granting in part and denying in part Lee's motion for partial summary judgment and granting only a limited portion of Marvel's motion for summary judgment. Shortly after this Court issued its ruling, Lee and Marvel confidentially settled their differences. On April 22, 2005, the Court signed the parties' Stipulation and Order of Dismissal.

**B.     SLMI Shareholders Bring Suits On Behalf of the Company Against Marvel and Lee *et al.***

26. Starting in 2007, minority shareholders of SLMI brought a number of lawsuits derivatively and/or on behalf of the Company seeking to enforce SLMI's rights of ownership to Lee's creations based upon the October 1998 Assignment. One action was filed in July 2007 in the United States District Court for the Central District of California, Docket No. 07-CV-4438 ("the California Action"). Another action was brought in the Southern District of New York before the Hon. Paul A. Crotty ("the S.D.N.Y. Action"). The complaints brought on behalf of SLMI alleged, *inter alia*, that:

- Pursuant to the October 1998 Assignment, Lee divested himself of all ownership rights to any and all of his creations by assigning those rights to SLMI;

6

- In November 1998, when Lee is purported to have assigned his rights to Marvel, Lee no longer possessed any rights to any of his creations;

- Lee and Marvel were aware of the previous assignment, but pursued a strategy by which Lee and Marvel continued to exploit Lee's creations without acknowledging the ownership rights assigned to SLMI; and

- When Lee and Marvel litigated *Lee v. Marvel* in this Court, neither Lee nor Marvel informed Judge Sweet of the October 1998 Assignment or the fact that SLMI may have been an indispensible party to the case.

27. I was involved in those actions in my individual capacity as an SLMI shareholder, I have reviewed the pleadings, and I believe the allegations made therein to be true to the best of my personal knowledge.

28. On March 31, 2010, Judge Crotty dismissed the S.D.N.Y. Action for lack of standing. Judge Crotty's dismissal is currently on appeal before the Second Circuit Court of Appeals.

## C. SLMI's Minority Shareholders Successfully Wrest Control Of SLMI From The Stan Lee Shareholder Group That Had Previously Dominated SLMI In Furthering Their Own Personal Interests To SLMI's Detriment.

29. On May 27, 2010, the Colorado Court of Appeals issued a decision and order reversing a lower court's refusal to seat minority shareholders that had been validly elected during a December 2008 shareholder meeting. The Colorado Court of Appeals acknowledged that SLMI, a Colorado corporation, had properly held a shareholder meeting in 2008 and that the Board elected at that meeting was the duly elected Board of Directors of SLMI.

30. On July 8, 2010, the SLMI Board held its first formal Board meeting and issued resolutions authorizing counsel for the Company to investigate the claims previously asserted derivatively on behalf of the Company and to pursue those claims or any others, as appropriate, in the best interests of the Company and its shareholders. As a first order of priority, SLMI is investigating whether a factual basis exists for the contention that neither Lee nor Marvel informed Judge Sweet in the *Lee v. Marvel* matter of the October 1998 Assignment.

### III. The Court Should Unseal The Sealed Documents.

31. I am unaware of any compelling reasons for the Sealed Documents to remain confidential.

32. In contrast, SLMI has four reasons for seeking disclosure of the Sealed Documents sealed in this matter:

*First*, SLMI is investigating the claims asserted on its behalf by derivative plaintiffs in separate but related cases (claims in California and claims currently on appeal before the Second Circuit) (the "Derivative Claims"). The Derivative Claims are generally based upon the allegation that, in October 1998, Lee assigned to SLMI all rights to any intellectual property he then possessed. According to the Derivative Claims, one month later, in November 1998, Lee no longer owned any intellectual property, but that, nonetheless, he assigned to Marvel certain rights pursuant to the November 1998 Agreement. The Derivative Claims are the assets of SLMI and SLMI is entitled to conduct a reasonable investigation of these claims in connection with its decision whether to take action, as appropriate, in the best interests of SLMI and its shareholders.

*Second*, SLMI is investigating whether, during a period when SLMI was subject to Chapter 11 proceedings in the Bankruptcy Court for the Central District of California, Lee and Marvel sought an adjudication, outside of the Bankruptcy Court, of ownership of intellectual property that was property of the SLMI bankruptcy estate and that should have been subject to the stay provisions and protections of the Bankruptcy Code and Rules.

*Third*, SLMI is investigating whether this Court based its decision in *Lee v. Marvel* upon a mistake or an incomplete record. The Derivative Claims allege that Lee and Marvel failed to inform this Court of the existence of the October 1998 Assignment, and that Lee may have asserted in sworn testimony that he owned the relevant intellectual property despite the fact that

Lee previously assigned such property to SLMI. SLMI should be allowed to investigate these claims by reviewing the Sealed Documents.

*Fourth*, and finally, SLMI is investigating derivative plaintiffs' assertions that SLMI has been adversely dominated by, among others, Lee, such that SLMI has been unable to assert claims on its own behalf. SLMI seeks disclosure of the Sealed Documents to determine whether Lee and other SLMI fiduciaries sought a judicial determination that Lee owned intellectual property that Lee had, in fact, previously assigned to SLMI. SLMI further seeks disclosure to determine whether SLMI fiduciaries caused SLMI to do nothing and failed to intervene in *Lee v. Marvel* notwithstanding their duties to protect the best interests of SLMI and SLMI's shareholders.

33. Accordingly, it is respectfully submitted that the Court should unseal the Sealed Documents.

### IV. This Court Should Grant SLMI's Motion to Intervene because SLMI Has An Interest in the Disclosure of the Sealed Documents That Has Not Been Adequately Protected By Either Lee or Marvel.

34. SLMI's specific interest in investigating its claim of ownership of the property that was the subject of this Court's previous January 17, 2005 Order provides a basis for standing to intervene as of right.

35. This motion is timely. Previously, the Company was administratively dissolved and without a properly elected or legally authorized Board. However, the Colorado Court of Appeals has recently authorized SLMI's current Board to act on behalf of the Company. Shortly after receiving the Court's authorization, SLMI has brought this motion.

36. SLMI asserts more than a sufficient interest relating to the property or transaction that is the subject of this action. SLMI is investigating potential claims brought on behalf of the Company. Now that the Colorado Courts have acknowledged that the Company's Board is duly

constituted, the Company has an interest in investigating SLMI's ownership claims and evaluating whether it is in the Company's best interests to pursue those claims.

37. Without intervention, the current disposition of this action may, as a practical matter, impair or impede SLMI's interests. At a minimum, without intervention, SLMI's interest in investigating its claims will have been impaired because the Sealed Documents contain judicial admissions and sworn statements to which SLMI has never previously been given access.

38. SLMI's interests were not adequately represented by either Lee or Marvel in this action to date and it appears that SLMI is a real party in interest in this action. SLMI is currently investigating allegations that Lee and Marvel acted to SLMI's detriment in regard to the exploitation of Lee's creations. In any event, SLMI's ownership of Lee's creations would severely impact both Lee and Marvel's financial interests. Accordingly, neither Lee nor Marvel can be expected to represent SLMI's interests here.

39. Simply put, at the heart of this action is the question of who owns Spider-Man and his comrades, as well as many other famous characters. This is also the central question alleged in the various actions brought derivatively on behalf of SLMI, spawned by the seemingly conflicting assignments in October and November 1998.

40. Finally, no undue delay or prejudice will result here because this case is closed and, at this point, SLMI is seeking no more than access to documents that should be publicly available.

41. Accordingly, the Court should grant SLMI's motion to intervene.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 13, 2010.

_____
Jose M. Abadin

## Exhibit A: Stan Lee's Creations[1]

| | | |
|---|---|---|
| Spider-Man | Balder the Brave | Ulik |
| X-Men | Gwen Stacy | Black Bolt |
| The Incredible Hulk | The Sandman | Medusa |
| The Fantastic Four | Electro | Karnak |
| Mr. Fantastic | Kraven the Hunter | Gorgan |
| The Invisible Woman | Skurge, The Executioner | Crystal |
| The Chameleon | Enchantress | Lockjaw |
| The Thing | Boomerang | The Shocker |
| Daredevil | Blacklash/Whiplash | The Inhumans |
| Silver Surfer | Kingpin | The Skrulls |
| Iron Man | Baron Wolfgang von Strucker | Toad |
| Mentallo | The Mandarin | Mastermind |
| Doctor Strange | Fixer | Blob |
| The Avengers | Hawkeye | Cyclops |
| Thor | Wonderman | Iceman |
| Doctor Doom | The Wasp | Beast |
| Magneto | Scarlet Witch | Odin |
| Colonel Nicholas Joseph "Nick" Fury | The Absorbing Man | Mangog |
| Galactus | Marvel Girl/Jean Grey, Phoenix | Quicksilver |
| Green Goblin | Captain Marvel/Captain Mar-vell | Triton |
| Doctor Octopus | Fandral/Fandral the Dashing | |
| The Vulture | MACH-IV/Beetle, Mach-1,2 and 3 | |
| Mysterio | Angel/Archangel, Warren Keith Worthington III | |
| Hogan/Hogun the Grim | John Jonah Jameson/J. Jonah Jameson, J.J., and J.J.J. | |
| Volstagg | Ant-Man/Yellowjacket, Giant-Man, Goliath | |
| The Lizard | Human Torch/Johnny Storm | |
| The Rhino | Mary Jane/Mary Jane Watson-Parker | |
| Maximus/Maximum the Mad | Power-Man/Atlas, Smuggler, Goliath, Erick Josten | |
| | | |
| | | |

---

[1] This list is not inclusive. SLMI reserves the right to supplement this list as its investigation continues and additional Stan Lee creations and other Stan Lee intellectual property are identified.